687 P.2d 1225

**STATE of Arizona, Appellee,**

v.

**Nathaniel TURNER, Appellant.**

No. 6016.

Supreme Court of Arizona,
In Banc.

May 9, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan and Arthur G. Hazelton, Deputy Public Defenders, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Nathaniel Junior Turner, was convicted and adjudged guilty of armed robbery, a Class 2 felony, in violation of A.R.S. §§ 13–1901, –1902, –1904, –1801, and –604. The trial judge also made a finding that the defendant was on parole when the offense was committed and sentenced defendant to life without possibility of parole for twenty-five years pursuant to A.R.S. § 13–604.01. We have jurisdiction pursuant to A.R.S. §§ 13–4031, –4035 and Arizona Constitution, Article 6, § 5.

We must decide the following issues:

I. Was the failure to sever the trials of the two defendants in this case reversible error?

II. Was the limiting instruction given by the trial court concerning defendant's prior conviction proper?

III. Was the issue of whether defendant was on parole at the time of the offense properly decided?

The facts necessary for a determination of this matter are as follow. Late on the evening of 1 April 1983 or early during the morning of 2 April 1983 co-defendant Fred McNair and a third party, Wilford Strong, met defendant in a club in south Phoenix. At 1 a.m. McNair tried to buy some liquor in a U-Totem, but was unable to do so due to the late hour. McNair was driving, defendant was in the front seat, and Strong was in the back seat. After driving around for approximately two hours, the three men pulled into a Union 76 gas station located at Grant Street and Interstate 17 in Phoenix. They drove to the self-service island, remained there a few minutes, and then drove to the full-service island. The gas-station attendant, Alvy Robins, walked out to the car. McNair asked Robins for some power steering fluid. Robins stated that he did not have any power steering fluid, but he did have transmission fluid, which "would work just as well." Robins walked back to the station building to obtain the can of transmission fluid. McNair propped the hood open with a jack that he kept in the trunk of the car. Robins returned with the fluid and handed the can and a spout to McNair. Defendant was standing near the front of the car.

While McNair was pouring the transmission fluid into the car, he asked Robins for some gasoline. Robins inserted the nozzle into the neck of the gas tank and set the handle so that it would pump automatically. McNair then handed Robins the half-empty can of transmission fluid and indicated that he would not be using any more of the fluid. The jack was removed from the car's hood and it was replaced in the trunk by McNair. Robins testified that he observed several cans of transmission fluid in the trunk. McNair then changed his mind and decided he wanted the half-empty can of transmission fluid. Robins turned around to retrieve the can from the pump island where he had placed it. As he turned back around defendant struck Robins in the face with the jack, and Robins fell to the ground. At this point either McNair or defendant demanded money from Robins, who took the only available money out of his pocket and handed it to the men, along with the office key. The two men returned to the car and drove away, heading east. During the commission of the crime, Strong did not leave the car.

Although Robins' face was bleeding and his left eye was swollen, he was able to observe the license plate number of the car, and wrote this down on a credit card invoice. Robins called Crime Stop and gave a description of the vehicle, the license plate number, and a description of the three men occupying the car. Officer Lum of the Phoenix Police Department received

this information in a "hot call" over his radio and saw the McNair vehicle coming towards him. He stopped the vehicle and returned it to the gas station, where Robins identified the occupants.

McNair and defendant were jointly tried for armed robbery. McNair testified twice. Originally, he testified that he never saw defendant leave the car after the car had pulled into the gas station. Upon retestifying, McNair stated that he did, indeed, see defendant outside the car. McNair further testified that he did not see defendant with the jack in his hands and did not see defendant strike Robins.

Defendant was convicted and adjudged guilty of armed robbery, and sentenced pursuant to A.R.S. § 13–604.01. Defendant appealed the judgment of guilt and the sentence.

### SEPARATE TRIALS

Prior to trial, defendant and co-defendant both filed motions to sever based upon the right to confrontation. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The motion to sever was renewed at the close of the state's case. At the hearings on both motions, defendant raised the issue of antagonistic defenses. The defendant has not pursued the Bruton confrontation question on appeal, but instead claims antagonistic defenses required severance.

■ Co-defendants' trials should be severed "if necessary to promote a fair determination of guilt or innocence of any defendant, or if the court detects the presence or absence of unusual features of the crime or case that might prejudice the defendant," *State v. Cruz*, 137 Ariz. 541, 543, 672 P.2d 470, 472 (1983) (citations omitted). Prejudice may result when "the competing defenses are so antagonistic at their cores that both cannot be believed." *State v. Cruz*, supra, at 545, 672 P.2d at 474. Accord, *State v. Kinkade*, 140 Ariz. 91, 93, 680 P.2d 801, 803 (1984), citing *Cruz*, supra; *State v. McCall*, 139 Ariz. 147, 152, 677 P.2d 920, 925 (1983). When the defenses are tangential rather than on a "collision

course," severance is not necessary. *Kinkade*, supra.

It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.

*State v. Cruz*, supra, 137 Ariz. at 544–45, 672 P.2d at 473–74 (1983).

■ The co-defendants' defenses at the time the pretrial motion for severance was made were not mutually exclusive. McNair claimed that he had a lack of knowledge that the crime was committed and a lack of intent to commit the crime. Turner argued that he was not at the scene of the crime and was misidentified as Robins' assailant. These defenses are not mutually exclusive because it would have been possible for a jury to believe both of the defendants. *See Cruz*, supra, at 545, 672 P.2d at 474 (core of each defendant's defense was his own non-involvement); *State v. Druke*, 115 Ariz. 224, 226, 564 P.2d 913, 915 (App.1977) (no error in refusing to sever where one defendant claimed misidentification and the other claimed he was a "passive" participant). The motion denying severance at this time was, therefore, proper.

At trial both defendants shifted their defenses. However, the testimony still did not indicate antagonistic defenses. McNair, for example, gave the following testimony:

Q Did you see him being struck?

A No, I did not.

    \*    \*    \*    \*    \*    \*

Q You saw a man laying on the ground but you didn't see anybody else, is that right?

A Yes.

Q You didn't see this gentleman right here, Nathaniel Turner, standing right there?

A No.

    \*    \*    \*    \*    \*    \*

Q When you got back in your car, where was Nathaniel Turner sitting?

A He was in the front seat.

And the second time McNair testified:

Q Did you ever see Mr. Turner with the jack in his hand?

A No, I did not.

Q Did you see Mr. Turner strike Mr. Robins with the jack?

A No.

Q At any time?

A By the position that I was in I couldn't see him or the attendant.

Defendant took the stand and, while admitting he was at the station, denied he hit Robins and testified he did not see anyone else hit Robins.

This was not a case of "I didn't do it, the co-defendant did it," wherein for the jury to believe the core of the testimony one defendant offered they had to disbelieve the core of the testimony offered by the co-defendant. Such was the case in Kinkade, supra, where we held consolidation was error. This is a case where the jury could find the core of McNair's defense true and still find the core of defendant's defense true. The defenses were not mutually antagonistic. Admittedly, the defendant was unable to overcome Robins' eyewitness testimony identifying the de-

fendant as the assailant. McNair's defense, however, did not detract from defendant's defense. As we have stated:

> Indeed, the jury could have rationally accepted the defense theory of both, or only one, or of neither defendant. The defenses were not mutually exclusive. Consequently, the nature of the defenses did not require severance.

*Cruz*, supra, 137 Ariz. at 545, 672 P.2d at 474. We find no error.

## PRIOR CONVICTION INSTRUCTION

Defendant alleges that the following instruction given by the trial court was in error:

> If a witness has been convicted of a felony, that conviction does not necessarily mean that you cannot believe his testimony. A witness's conviction of a felony is one of the circumstances you should consider in determining whether to believe that witness.

The wording of the instruction was the same wording found in Revised Arizona Jury Instruction 5(a). Defendant argues that under *State v. Canedo*, 125 Ariz. 197, 608 P.2d 774 (1980) and *State v. Cruz*, 127 Ariz. 33, 617 P.2d 1149 (1980) the instruction "was inadequate to properly inform the jury of the specific limited use of prior convictions."

In *Canedo* and *Cruz* the defense attorneys had specifically requested a particular instruction. In each case the trial judge refused to give the requested instruction, giving RAJI 5(a) instead, and in each case we reversed. In *Cruz* we stated that

> if a prior conviction is allowed to impeach a defendant, then the judge must clearly instruct the jury on the limited use to be made of the prior conviction. The RAJI (5A) instruction is insufficient in the case where the witness is the defendant. The failure to tell the jury that the prior conviction is to be used only to evaluate the defendant's credibility and not to be considered as evidence of his guilt of the offense charged required reversal of Canedo's conviction. We emphasized that the danger in the jury's concluding

that the defendant is a bad man and convicting on lesser evidence than would ordinarily be necessary to support a conviction, can be decreased by properly instructing the jury on the limited use of the prior conviction. In the instant case, where the testimony is totally conflicting, the failure to admonish the jury not to consider the appellant's second degree murder conviction as evidence of appellant's disposition to commit the assault and possession charges, creates an increased danger.

*Cruz*, 127 Ariz. at 35, 617 P.2d at 1151.

Admittedly, this language could be read to indicate that the RAJI 5(a) instruction is erroneous when applied to the facts in the present case. We have addressed this issue most recently, however, in yet another case where a limiting instruction, as in the instant case, was neither requested nor given. We stated that:

"It has long been the rule in this jurisdiction that unless an objection is interposed to an instruction, or a request for an instruction is made, error cannot be predicated on the giving or the failure to give an instruction. *State v. Evans*, 88 Ariz. 364, 356 P.2d 1106 (1960). This Court has repeatedly held that if a defendant wants an instruction limiting the effect of certain evidence he must request it, and the failure of the trial court to so instruct is not error in the absence of a request therefor. *State v. Evans*, supra, *State v. Polan*, 80 Ariz. 129, 293 P.2d 931 (1956); *Burgunder v. State*, 55 Ariz. 411, 103 P.2d 256 (1940)."

*State v. Taylor*, 127 Ariz. 527, 530, 622 P.2d 474, 477 (1980). *Taylor* is dispositive of the present case. Defendant Turner did not request a specific limiting instruction and, absent fundamental error, may not now complain. "We cannot find that the failure of the trial court to instruct without a request by counsel deprived appellant of a right essential to his defense nor of a fair trial." *Id. Accord, State v. Miller*, 120 Ariz. 224, 226, 585 P.2d 244, 246 (1978); *State v. Loyd*, 118 Ariz. 106, 110, 574 P.2d 1325, 1329 (App.1978). We find no error.

### A.R.S. § 13–604.01

Prior to trial the state filed an allegation pursuant to A.R.S. § 13–604.01(A) & (B), charging that the offense was committed while on parole. During trial the defendant gave the following testimony:

Q And do you recall an officer asking you for identification?

A Yes.

Q And what did you tell him?

A I told him I didn't have any identification and my name is Henry Williams.

Q Why did you tell him that?

A Because I had three tickets from riding my motorcycle, and I had talked to my parole officer earlier * * *.

\* \* \* \* \* \*

Q Who was your parole officer?

A Paul Hanjost (phonetic) or I am not positive of the last name.

After trial, at the time of sentencing, the state called defendant's parole officer who testified that defendant was on parole at the time of the offense, 2 April 1983, and had been on parole since his release from prison on 20 December 1982. The defendant objected, stating that the matter should be tried to a jury. The court found:

I have made the finding that this was committed while you were on parole. Therefore, you must serve a minimum of twenty-five years flat time. The sentence will be consecutive to any other terms that you have to finish, to serve. You will receive credit on this term of 122 days.

Defendant submits that his sentence was improperly enhanced pursuant to A.R.S. § 13–604.01 which states in pertinent part:

Notwithstanding any provision of law to the contrary, a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another, if committed while the person is on * * * parole, * * * for conviction of a felony offense shall be

sentenced to life imprisonment and is not eligible for * * * parole * * * until the person has served not less than twenty-five years.

We note that at no time during the trial or on appeal has defendant denied the fact that he was on parole at the time of the offense. Defendant argues only that this finding should have been made by the jury rather than the trial judge, and analogizes A.R.S. § 13–604.01 to § 13–604(K) which applies to prior convictions. That statute, § 13–604(K), requires that if a previous conviction or the dangerous nature of the felony is alleged by the state, these allegations must either be admitted by the defendant or found by the trier of fact. *See State v. Grilz*, 136 Ariz. 450, 458, 666 P.2d 1059, 1067 (1983); *State v. Parker*, 128 Ariz. 97, 99, 624 P.2d 294, 296 (1981); *State v. Brydges*, 134 Ariz. 59, 62, 653 P.2d 707, 710 (App.1982). *See also* Rules 17.6 and 19.1(b)(2), Arizona Rules of Criminal Procedure, 17 A.R.S.

 We disagree with defendant's analogy. A.R.S. § 13–604 concerns the existence of a prior felony conviction which the defendant may admit or deny. If the defendant admits the prior conviction while testifying there is no need to have the question tried to a jury. Rule 19.1(b)(2), Arizona Rules of Criminal Procedure, 17 A.R.S. A.R.S. § 13–604.01 does not contain language that requires a finding by the trier of fact that the defendant was on parole. That the crime was committed while the defendant was on parole is in the nature of an aggravating circumstance which enhances the possible penalty. When determining whether an aggravating circumstance exists, a trial judge

> may consider all evidence and information presented at all stages of the trial together with all probation and presentence reports and the testimony presented at the aggravation and mitigation hearing prior to sentencing. For sentencing purposes, the trial judge will have a much broader information base than was presented to the jury at trial. * * * It is only necessary that such a finding be found to be true and that it be

supported by reasonable evidence in the record.

*State v. Meador*, 132 Ariz. 343, 346–47, 645 P.2d 1257, 1260–61 (App.1982). In the present case, in addition to the testimony of defendant's parole officer at the time of sentencing, the defendant also testified he was on parole. We find that the trial court's determination that defendant was on parole pursuant to A.R.S. § 13–604.01 was supported by reasonable evidence in the record. We find no error.

Defendant's conviction and sentence are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.