741 P.2d 257

**STATE of Arizona, Appellee,**

v.

**Darcy Dale HURLEY, Appellant.**

**No. 6674.**

Supreme Court of Arizona,
En Banc.

July 2, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

FELDMAN, Vice Chief Justice.

Darcy Dale Hurley (defendant) was convicted by a jury of seven counts armed robbery and one count aggravated assault. Hurley was sentenced under the enhancement provisions of A.R.S. § 13–604.02(A)[1] because the trial court determined that he was on release from confinement when he committed the offenses. Hurley contends

1. Renumbered from § 13–604.01(A) by 1985 Ariz.Sess.Laws, Ch. 364, § 5, effective May 16, 1985. We will use the current designation in this opinion.

that § 13–604.02(A) is unconstitutional unless interpreted to require proof beyond a reasonable doubt and trial to a jury, rather than a judge, to determine release status. He also contends that his sentence—three consecutive life terms—is unconstitutionally excessive.

We have jurisdiction of Hurley's direct appeal pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

### FACTS

On the evening of February 26, 1985, Hurley and an accomplice, William Alford Elliott, robbed three separate groups of people in east Phoenix hotel parking lots. Shortly before 8:00 p.m., the two men robbed an elderly couple. Brandishing a handgun, Hurley took the man's wallet, the woman's purse and jewelry, and then ordered the two to lie face-down between two vehicles on the asphalt as he and Elliott left. During the next hour, Hurley and Elliott robbed two businessmen as they were leaving their car. Hurley twice used the gun to strike one of the men in the face. After 9:00 p.m., Hurley, unaccompanied, robbed a different group of three men. Shortly following the third robbery, the police arrested Hurley and Elliott.

A jury convicted Hurley of seven counts armed robbery and one count aggravated assault. A.R.S. §§ 13–1904, –1902, –1901, –1204(A)(1) and (2), –1203(A)(1). The *jury* found all eight offenses dangerous because Hurley had used or exhibited a deadly

weapon. A.R.S. § 13–604(F) and (G).[2] Following the conviction, the trial court convened to determine whether Hurley was on release from confinement for conviction of a felony offense on the date of the robberies. If so, the special sentencing provision of § 13–604.02(A) would apply. This would require mandatory life imprisonment without possibility of parole for twenty-five years.[3] Hurley objected to this procedure, arguing that release status should be determined by the jury, rather than by the trial judge. The state persuaded the court that it could determine release status. *See State v. Turner,* 141 Ariz. 470, 687 P.2d 1225 (1984).

The state then introduced certified copies of official documents showing that Hurley had prior convictions for endangerment, burglary, and escape and was on "mandatory release"[4] status from the Arizona Department of Corrections (DOC) when he committed the robberies. In addition, a parole officer testified that Hurley was to be on mandatory release status until June 20, 1985.

Finding that the state had proved beyond a reasonable doubt that Hurley committed the robberies while on release, the trial court imposed life sentences for each robbery count. § 13–604.02(A). The judge then found each robbery to be a discrete event and imposed the terms consecutively, stating that she had determined that Hurley is a danger to society and should be punished separately for each separate rob-

---

**2.** Sections 13–604(F) and (G) enhance the punishment imposed on a defendant who used or exhibited a deadly weapon. For the first time offender, the maximum sentence is increased and the wait for parole eligibility lengthened. For the repetitive offender, the minimum sentence also is increased. The increases can be quite significant. For instance, under § 13–604(G), a repetitive offender convicted of a class 2 or class 3 felony involving use of a deadly weapon must receive twice the minimum and not more than four times the maximum sentence ordinarily authorized for the crime for which he was convicted and is not parole eligible until he has served two-thirds of the sentence imposed.

**3.** The relevant portions of § 13–604.02(A) provide:

[A] person convicted of any felony offense involving the use or exhibition of a deadly weapon ... if committed while the person is on probation for a conviction ... or parole, work furlough or any other release or escape from confinement for conviction of a felony offense shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis ... until the person has served not less than twenty-five years.

**4.** Under this release category, individuals are freed six months before their sentences expire, but remain under jurisdiction of the Department of Corrections for the duration of the sentence. *See State v. Caldera,* 141 Ariz. 634, 638, 688 P.2d 642, 646 (1984).

bery. A.R.S. § 13–708. Therefore, Hurley, now 32 years old, received three consecutive life sentences and will not be eligible for parole until he is over one hundred years old. A.R.S. § 13–604.02(A).

Hurley has alleged a potpourri of federal constitutional violations. First, he contends that as interpreted by this court, § 13–604.02(A) violates the due process and equal protection clauses of the fourteenth amendment, the eighth amendment prohibition against cruel and unusual punishment, and the jury trial guarantee of the sixth amendment. In addition, he claims that the manner in which the sentencing statute and other criminal statutes were applied to him created an unconstitutionally excessive sentence. We address these issues in turn.

## DISCUSSION

### I. Constitutionality of A.R.S. § 13–604.-02(A)

#### A. Statutory Background and Interpretation

Arizona's penal code creates a tiered system of punishment: courts in some cases may, and in other cases must, sentence offenders to longer prison terms based on specified conduct or status while committing an offense. *See* A.R.S. §§ 13–604, –604.01, –604.02. For instance, Arizona courts may sentence a first-time, "run-of-the-mill," unarmed robber to a maximum of five years with parole eligibility at half-time. A.R.S. §§ 13–1902, –701, –702, 41–1604.06(D). If that same person either uses or exhibits a deadly weapon or dangerous instrument or has a prior felony conviction, the court must sentence him

from seven to twenty-one years with parole eligibility only after serving two-thirds time. A.R.S. §§ 13–1904, –604(B) and (G), –701, –702. If the person uses or exhibits a deadly weapon and has previously been convicted of a class 1, 2, or 3 felony involving the use or exhibition of a deadly weapon, the court may impose a sentence of up to twenty-eight years with parole eligibility at two-thirds time. A.R.S. § 13–604(G). Under the statute at issue in this case, if a person on probation, parole, work furlough, or any other release or escape from confinement for a felony conviction commits a felony while using or exhibiting a deadly weapon or dangerous instrument, the court *must* sentence him to life imprisonment without possibility of parole for twenty-five years. § 13–604.02(A).

Repeat offenders have been punished more severely in Arizona since the turn of the century. *See* 1901 Revised Statutes of Arizona Territory Title XVII §§ 618, 630, 631. Since then, unless a defendant admitted a prior conviction, this state required that prior convictions be found by a jury before punishment could be enhanced. *Id.* § 618. Our research did not reveal any constitutional basis for this requirement in Arizona; apparently the procedure was commonly accepted by many states, some believing that it was constitutionally mandated.[5]

When the Arizona Legislature overhauled the penal code in 1978, it increased the punishment for felony offenders who intentionally or knowingly inflicted serious physical injury or used or exhibited a deadly instrument[6] during the commission of a

---

5. *See, e.g., Oyler v. Boles,* 368 U.S. 448, 452–53, 82 S.Ct. 501, 504, 7 L.Ed.2d 446 (1962) (applying West Virginia law); *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954) (applying Tennessee law); *People v. Foster,* 3 Cal.App.2d 35, 39 P.2d 271 (App.1934); *People v. Casey,* 399 Ill. 374, 77 N.E.2d 812 (1948); *State v. Livermore,* 59 Mont. 362, 196 P. 977 (1921); *State v. Janiec,* 9 N.J.Super. 29, 74 A.2d 605 (1950), *aff'd,* 6 N.J. 608, 80 A.2d 94, *cert. denied,* 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951); *People v. Sickles,* 156 N.Y. 541, 51 N.E. 288 (1898); *State v. Bruno,* 69 Utah 444, 256 P. 109 (1927).

6. The legislature had been increasing the penalties for committing various specific offenses

while armed. *See, e.g.,* A.R.S. § 13–249 (Supp. 1957–78) (increasing penalties for those who committed assault while armed with a deadly weapon and for repeat offenders); A.R.S. § 13–643(B) (Supp.1957–78) (increasing penalties for those who committed robbery while armed and for repeat offenders). These types of statutes are popularly known as "use a gun—go to prison" laws. *See generally* Note, *California's "Use a Gun—Go to Prison" Laws and Their Relationship to the Determinate Sentencing Scheme,* 5 WSU CRIM.JUST.J. 297 (1982); Lizotte & Zatz, *The Use and Abuse of Sentence Enhancement for Firearms Offenses in California,* 49 LAW & CONTEMP.PROBS. 199 (1986).

felony. *See* A.R.S. § 13–704 (Supp.1978) (now § 13–604). At that time, the legislature combined all of the aggravating factors—being armed, seriously injuring someone, and having prior convictions—in § 13–704, which retained the traditional requirement that the trier of fact find the aggravating circumstance. A.R.S. § 13–704(K) (Supp.1978) (now § 13–604(K)).[7]

■ In 1982, the legislature added the statute at issue here. The new special sentencing provision applied to those convicted of dangerous offenses while on probation, parole, work furlough, other release from confinement, or escape. A.R.S. § 13–604.02(A). Unlike § 13–604(K), the new statute did not expressly require that a jury make the factual determination as to release status. We therefore held that the status determination necessary to invoke § 13–604.02(A) could be made by the trial judge, using a preponderance of the evidence standard. *See Turner*, 141 Ariz. at 475, 687 P.2d at 1229; *State v. McNair*, 141 Ariz. 475, 485, 687 P.2d 1230, 1240 (1984); *see also State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985). We concluded that the statuses enumerated in § 13–604.-02(A) were not elements of a new offense, but rather aggravating factors; they were not used to determine guilt, but only to enhance the sentence once a defendant was found guilty of an underlying offense. *Turner*, 141 Ariz. at 475, 687 P.2d at 1229. Although a court may make the status determination necessary to invoke § 13–604.02(A), a jury still must make the determination of dangerousness. § 13–604(K); *State v. Caldera*, 141 Ariz. 634, 637–38, 688 P.2d 642, 645–46 (1984); *see also State v. Hudson*, 152 Ariz. 121, 126, 730 P.2d 830, 835 (1986).

Defendant raises an issue not considered in *Turner* or its progeny. He claims that our interpretation of § 13–604.02(A) is unconstitutional in light of the recent United States Supreme Court decision of *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Basing his argument on the guarantees of jury trial and due process, defendant contends that the release status determination required to invoke A.R.S. § 13–604.02(A) substantially changes and increases the penalty, thereby creating a new crime so that the state is constitutionally required to prove release status to a jury beyond a reasonable doubt.[8]

### B. *McMillan v. Pennsylvania*

McMillan and other petitioners challenged the constitutionality of a Pennsylvania statute that provided for a mandatory minimum sentence of five years if the trial court found by a preponderance of the evidence that a defendant visibly possessed a firearm while committing one of seven enumerated felonies. 477 U.S. at ——, 106 S.Ct. at 2414. The statute did not authorize a greater maximum sentence than that otherwise allowed for the underlying offenses, but only increased the minimum sentence allowable. *Id.* The *McMillan* petitioners all were sentenced by trial courts to terms of less than five years on the ground that the statute was unconstitutional. In the United States Supreme Court, the petitioners argued that because the state was increasing their sentences solely because they visibly possessed firearms, possession became an element of the crime which the state had to prove to a jury beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (state must prove be-

---

7. This court incorporated the statutory procedure into its rules of criminal procedure. *See* Rules 17.6 and comment, and 19.1(b)(2), Ariz.R. Crim.P., 17 A.R.S. (the rule formalizes the existing practice of Arizona's courts).

8. For the court to invoke the special sentences of § 13–604, a jury must find a prior conviction. § 13–604(K). Obviously, one who falls within any of the enumerated release statuses of § 13–604.02(A) necessarily has a prior felony conviction. Under the statutory scheme, how-

ever, if a felon commits an offense while on probation, parole, etc., the prosecutor is relieved of proving the prior conviction to a jury beyond a reasonable doubt. We recognize that this creates an absurd result. However, if our interpretation of § 13–604.02(A) survives *McMillan*, there is nothing to prevent the legislature from allowing a sentencing court, rather than a jury, to make the determination of prior convictions also.

yond a reasonable doubt every fact necessary to constitute the crime).

A five-member majority of the Court rejected this argument, holding that possession of a firearm merely enhances the sentence for the underlying felony and is not an element of an offense. In reaching that conclusion, the majority held that *Winship*'s due process requirements of proof beyond a reasonable doubt and the sixth amendment's jury trial guarantee only apply to elements of an offense and not to sentencing factors, regardless whether the punishment turns on findings of specific or "identified" fact. 477 U.S. at ——, 106 S.Ct. at 2416, *citing Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Refusing to define the constitutional limitation or to lay down any "bright-line" test, *id.* 477 U.S. at ——, ——, 106 S.Ct. at 2417, 2419, the Court nevertheless cited several criteria that led it to conclude that visible possession of a firearm was a sentencing consideration, rather than an element of the crime.

First, the possession factor applied only after the defendant had been convicted of a statutorily defined crime. *Id.* at ——, 106 S.Ct. at 2417. Second, a finding that the factor existed did not alter the maximum penalty nor create "a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available." *Id.* at ——, 106 S.Ct. at 2417–18. Third, in adopting this factor, the legislature did not change the definition of any existing offense but "simply took one factor ... always ... considered by sentencing courts to bear on punishment" and specified the weight to be given that factor by the sentencing judge. *Id.* at ——, 106 S.Ct. at 2419. The court thus found that the statute

'ups the ante' for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense.

477 U.S. at ——, 106 S.Ct. at 2418.

Defendant argues that application of the criteria enumerated by the *McMillan* majority compels the conclusion that A.R.S. § 13–604.02(A) release status is an element of a separate offense which could be identified as "armed robbery dangerous by a person on release status." It is true, as defendant argues, that unlike the statute upheld in *McMillan*, § 13–604.02(A) does more than merely "up the ante." The statute increases not only the minimum but the maximum sentence, thus creating a whole new range, twenty-five years to life, for any dangerous nature felony. The penalty created is different than the penalty prescribed by the legislature for the underlying felony. Defendant therefore argues that the legislature's failure to specify release status as an element of the crime is meaningless. In defendant's view, no matter what label the legislature attaches, a new crime with a different punishment is proved on a finding of release status.

■ Thus, we must decide whether the state has created a separate offense in which release status is not merely a sentencing factor but is a constituent element of the crime, subjecting a defendant to more severe punishment that he would receive for the underlying felony.[9] If so, then the defendant is correct that the Constitution grants him a right of trial by jury with the reasonable doubt standard applied. *In re Winship, supra.* The state's right to

---

9. The Arizona courts have published conflicting statements about whether recidivist statutes create a new offense. *Compare State v. Allen,* 111 Ariz. 125, 126, 524 P.2d 502, 503 (1974) (statutes authorizing a more severe penalty for persistent offenders do not create a new, separate, distinct, independent or substantive offense); *Valdez v. State,* 49 Ariz. 115, 120, 65 P.2d 29, 30–31 (1937) (merely sentence-enhancement provisions) *with State v. Ross,* 107 Ariz. 240, 243, 485 P.2d 810,

813 (1971) (prior conviction is an element of a criminal prosecution that must be proved beyond a reasonable doubt); *State v. Pennye,* 102 Ariz. 207, 208, 427 P.2d 525, 526 (1967) (same); *State v. Cobb,* 2 Ariz.App. 71, 76, 406 P.2d 421, 426 (1965) ("Every fact to be determined by a jury which may be essential to the infliction of legal punishment upon a human being must be proven beyond a reasonable doubt.").

label crimes and to define the elements of the offense is restricted by the due process guarantees of presumption of innocence and resulting requirement of proof beyond a reasonable doubt. *See Martin v. Ohio,* — U.S. —, —, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987) (Powell, J., dissenting); *Patterson,* 432 U.S. at 210, 97 S.Ct. at 2327; *Mullaney v. Wilbur,* 421 U.S. 684, 698–99, 95 S.Ct. 1881, 1889–90, 44 L.Ed.2d 508 (1975).

## C. Resolution

■ We are met with the problem of having no definite tests to apply in resolving the federal constitutional issue. As noted, the *McMillan* Court did not define the constitutional limits to state power in enumerating sentencing factors as distinguished from elements of the crime. Some of the factors discussed in disposing of the *McMillan* claims militate in favor of a finding that release status for purposes of § 13–604.02(A) is a component of a crime requiring proof beyond a reasonable doubt. For example, the finding of release status will expose the defendant to both greater stigma and special punishment. 477 U.S. at —, 106 S.Ct. at 2426 (Stevens, J., dissenting). Despite this, we conclude that *McMillan* does not require us to find that release status is a separate element of a separate crime. Instead, for the following reasons, we affirm our previous holding that release status is a sentence-enhancing factor which may be found by the judge and need not be proved beyond a reasonable doubt.

First, the Supreme Court did not state that an increase in the entire range of sentence, both minimum and maximum, automatically dictated that the factor on which such an increase turned was an element of the crime. Indeed, as noted *ante,* the court laid down no bright-line test. Second, the factor here in question never has been recognized as an element of any particular common law crime nor, for that matter, of the "new crimes" commonly found in state codifications of penal law. Release status is, on the other hand, a factor long recognized as an appropriate sentencing consideration to be submitted to and evaluated by the sentencing judge.

Third, release status does not require evaluation of the conduct or mens rea involved in the prohibited transaction. In our view, such subjective evaluations fall somewhat more readily within the area that traditionally has been left to the factfinder rather than to the sentencing judge. The question of release status, unlike a subjective determination of intent, ordinarily will require objective evidence and will entail few, if any, disputed facts. Documents ordinarily will be the best evidence of status. The need for jury trial and findings by proof beyond a reasonable doubt is less compelling than it would be if the state were punishing conduct or a characterization of conduct rather than an objective status. *See* 477 U.S. at —, 106 S.Ct. at 2422 (Stevens, J., dissenting). Finally, and closely related to the other reasons, release status is the type of determination that may be applied across the board as a sentence-enhancing factor to almost any crime defined in the penal code.

For these reasons, we conclude that defendant's argument must fail. Neither the sixth nor the fourteenth amendment is violated by interpreting A.R.S. § 13–604.02(A) to allow the judge to make the finding of release status by a preponderance of the evidence at the sentencing hearing.

Defendant argues that *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), requires a contrary conclusion. We disagree. On due process grounds, *Specht* invalidated a Colorado statute enhancing punishment on a post-trial finding that the defendant posed a threat to the public. However, *Specht* was based upon the fact that the statute allowed the court to make findings on the basis of documentary evidence with no notice to the defendant, and no right to be present with counsel. The statute gave defendant no right to examine the evidence and witnesses against him nor to offer his own evidence. 386 U.S. at 610, 87 S.Ct. at 1212. The basis of the *Specht* decision was neither deprivation of a jury trial nor failure to require proof beyond a reasonable doubt. Federal

courts have considered the applicability of *Specht* to 18 U.S.C. § 3575, a federal recidivist statute similar to A.R.S. § 13–604.-02(A), and have uniformly rejected due process and sixth amendment challenges. *See United States v. Davis*, 710 F.2d 104, 106–07 (3rd Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983); *United States v. Schell*, 692 F.2d 672, 676–77 (10th Cir.1982); *United States v. Bowdach*, 561 F.2d 1160, 1172–74 (5th Cir.1977); *United States v. Stewart*, 531 F.2d 326, 332 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).[10]

We conclude that Arizona has not changed the elements to avoid having to prove a traditional or logical component of the crime beyond a reasonable doubt.[11] Although the Arizona legislature has not expressly stated in the statute that a felony offender's prior status is an aggravating factor for sentence enhancement purposes and not an element of the offense, tradition, logic, and the organization of the penal code make that clear. The release status provision appears in chapter six. The code does not define specific offenses until chapter ten. The state merely has used the fact that defendant was given a "chance" by early release from custody—and misused it—as a sentencing factor that enhances punishment. This accords with traditional sentencing practice.

D. The State Constitution

■ At oral argument, defendant raised an issue that was not briefed or raised below. He contended that even if the federal Constitution does not require status to be proved to a jury, Arizona due process requires it because the state traditionally has been required to show prior convictions and dangerousness to a jury beyond a reasonable doubt. We agree that differing language or special Arizona traditions or customs may require us to interpret provisions of the Arizona Constitution more expansively than the interpretation given to the federal Constitution. *State v. Bolt*, 142 Ariz. 260, 263–65, 689 P.2d 519, 522–24 (1984); *State v. Martin*, 139 Ariz. 466, 473–74, 679 P.2d 489, 496–97 (1984). Given the preconstitutional history of this state, in which defendants were granted the right of trial by jury on issues such as prior conviction, we might not interpret Arizona constitutional guarantees as narrowly as the federal guarantees have been interpreted in *McMillan*. *See* Ariz. Const. art. 2, §§ 4, 23, and 24.

■ In this case, we believe the analysis appropriate to interpret the guarantees of the Arizona Constitution is the same as that which we have applied to the federal questions. *See ante.* Where minimum and maximum penalties would be increased by factual findings, particularly those which relate to a component of a crime, the constitutional guarantees would be meaningless if trial by jury with a reasonable doubt standard could be obviated simply by labeling a logical and traditional element of the crime as a "sentencing factor." Where, however, the factual inquiry involves a factor used only to determine punishment to be imposed once the elements of the crime have been found, the guarantees of

---

**10.** A majority of federal courts also have upheld the constitutionality of another similar statute, the armed career criminal act. 18 U.S.C.App. § 1202(a). Under that statute, a person convicted of possession of a firearm, ordinarily punishable by a two-year sentence, must be sentenced to a mandatory prison term of fifteen years if he has three prior convictions for burglary or robbery. The prior convictions are not an element of the offense, but a sentencing factor. *See United States v. Hawkins*, 811 F.2d 210 (3rd Cir.1987); *United States v. Gregg*, 803 F.2d 568, 570 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987). *But see United States v. Davis*, 801 F.2d 754, 755 (5th Cir.1986) (the act is not merely a sentence-enhancement provision but creates a new offense).

**11.** For instance, to support the armed robbery convictions in this case, the state had to prove that (1) Hurley took another's property from a person or the person's immediate presence, (2) against the person's will, (3) Hurley threatened to use force against the person with intent either to coerce surrender of property or to prevent resistance, and (4) Hurley or an accomplice was armed with a deadly weapon or a simulated deadly weapon or used or threatened to use a deadly weapon or dangerous instrument or a simulated deadly weapon. A.R.S. §§ 13–1902, –1904.

the Constitution are inapplicable. *See Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). We need not reach these fine points in this case. In our view, release status is clearly not an element of the crime. Being on release is not a crime in itself. It involves no component of criminal activity. The crime is complete whether or not the perpetrator was on release. The status determination merely requires a court to find that, at the time the offense was committed, the defendant was subject to the jurisdiction of the department of corrections. This finding is applied to enhance punishment for all recognized crimes.

Section 13–604.02(A) does not, by its terms, cover the question of jury trial nor specify the standard of proof required for a finding of release status. We hold that article 2, sections 4, 23, and 24 of the Arizona Constitution do not require us to interpret § 13–604.02(A) so as to require a jury trial on the question of release status. Nor does the Arizona Constitution require that release status be proved beyond a reasonable doubt. The status is a sentencing factor which may be found by the court at the sentencing hearing.

■ This court, however, has recently held that to prove prior convictions, the state must offer in evidence a certified copy of the documents establishing the conviction and must prove that the defendant is the person to whom the documents refer. *State v. Hauss*, 140 Ariz. 230, 681 P.2d 382 (1984). This documentation requirement may be excused only if defendant admits the prior conviction or the state can show "that its earnest and diligent attempts to procure the necessary documentation were unsuccessful for reasons beyond its control and that the evidence introduced in its stead is highly reliable." 140 Ariz. at 231, 681 P.2d at 383; *see also State v. Lee*, 114 Ariz. 101, 105–06, 559 P.2d 657, 661–62 (1976).

*Hauss* did not discuss the effect of "highly reliable" evidence on the standard of proof, although the term certainly bears upon the subject. Of course, the standard traditionally applied to findings made by a jury under § 13–604(K) and its predecessors has been proof beyond a reasonable doubt. *State v. Ross*, 107 Ariz. 240, 485 P.2d 810 (1971); *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967). Apparently this court has never analyzed the issue, evidently assuming that because the issue of prior convictions was tried to a jury, proof beyond a reasonable doubt was required.

■ We held last year that insurance companies cannot be "punished" by assessment of punitive damages absent clear and convincing evidence. *Linthicum v. Nationwide Insurance Co.*, 150 Ariz. 326, 723 P.2d 675 (1986). It would be anomalous to protect insurance companies with the higher standard, but permit imposition of life sentences on a lesser standard of proof. We hold, therefore, that for the court to find the release status enhancing factor of § 13–604.02(A), the state must comply with the documentary and reliable evidence standards required by *Hauss* to prove prior convictions.[12] In effect, the court must find release status by clear and convincing evidence before imposing the enhanced sentence of § 13–604.02(A). This change in the quantum of proof required is prospective; it will apply to all sentences imposed after the date of the mandate in this case. *Hawkins v. Allstate Insurance Co.*, 152 Ariz. 490, 733 P.2d 1073 (1987). The standard of proof is not at issue in Hurley's case because the trial court found beyond a reasonable doubt that Hurley was on release when he committed the robberies.

### E. Other Constitutional Matters

■ Defendant also claimed that § 13–604.02(A) violates the equal protection and cruel and unusual punishment clauses of the federal Constitution. We see no reason to reconsider our recent analysis of these challenges. *See State v. Day*, 148 Ariz. 490, 498–99, 715 P.2d 743, 751–52 (1986) (not cruel and unusual); *State v. Allie*, 147

---

12. This holding is made solely as a matter of state law, and is not based on federal precedent. *See Michigan v. Mosley*, 423 U.S. 96, 120–21, 96 S.Ct. 321, 334–35, 46 L.Ed.2d 313 (1975) (Brennan, J., dissenting).

Ariz. 320, 323, 710 P.2d 430, 433 (1985) (no equal protection violation); *State v. Williams,* 144 Ariz. 433, 444–45, 698 P.2d 678, 689–90 (1985) (no equal protection violation and not cruel and unusual).[13]

## II. Sentence

Defendant contends that the trial court should have sentenced him to concurrent life sentences with eligibility for parole after serving twenty-five years. He claims that the trial court abused its discretion when it imposed three consecutive sentences, thereby "warehousing" him for life without investigating his potential for rehabilitation.

■ The sentence imposed is within statutory limits. A.R.S. §§ 13–604.02(A), –708; *State v. Perkins,* 144 Ariz. 591, 699 P.2d 364 (1985). We do not modify or reduce a sentence within statutory parameters unless the trial court abused its discretion. *Day,* 148 Ariz. at 498, 715 P.2d at 751; *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336 (1985). We disagree with Hurley that the trial court abused its discretion by not investigating his potential for rehabilitation in less than seventy-five years. A sentencing court may, but is not required to, take the prospect of rehabilitation into account. A.R.S. § 13–702(E)(5) (Supp.1986). Unfortunately, rehabilitation is not a stated policy goal of Arizona's criminal justice system. A.R.S. § 13–101.

■ Hurley also contends that even if the trial court did not abuse its discretion, the three consecutive life sentences are unconstitutionally excessive because they are substantially disproportionate to the severity of the crimes. To evaluate whether a sentence is unconstitutionally excessive, we use the test enunciated in *Solem v. Helm,* 463 U.S. 277, 290–93, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983); *Allie, supra; Cocio, supra.* We weigh the gravity of the offense against the harshness of the penalty, and then consider the sentences imposed on similarly situated defendants in this and other jurisdictions. *Allie, supra.*

■ Hurley's crimes were violent and included several of the aggravating factors used by courts to increase sentences. *See* A.R.S. § 13–702. He threatened seven victims with force while armed with a gun. He shoved an elderly man to the pavement and struck another man two times in the face with his gun. Although none of Hurley's victims was seriously injured, the potential for injury was high. *See Allie,* 147 Ariz. at 323–24, 710 P.2d at 433–34. We agree with Hurley that his sentence is harsh. It might well be unconstitutionally excessive, except for Hurley's history. However, in light of his prior record, the nature of these crimes, and the fact that they were committed on release, we do not find the sentence—essentially imprisonment for life without possibility of parole—so harsh that it offends contemporary society's principles. In a case remarkably similar to this one, we upheld a similar term imposed pursuant to § 13–604.02(A) on a defendant who committed three armed robberies in one evening. *Perkins, supra.*

We see no need to repeat the rest of the *Solem* test as it is well analyzed in *Perkins, supra,* and *McNair, supra.*

We have reviewed the record for fundamental error. A.R.S. § 13–4035. Finding none, the judgment and sentence of the trial court are affirmed.

---

**13.** I find myself in an unusual position of not following my own views on this issue. As I have written many times, in my view § 13–604.02(A) violates the eighth amendment and the doctrine of separation of powers. These arguments are covered in *State v. Cocio,* 147 Ariz. 277, 288–89, 709 P.2d 1336, 1347–48 (1985) (Feldman, J., dissenting); *State v. McNair,* 141 Ariz. 475, 487, 687 P.2d 1230, 1243 (1984) (Feldman, J., specially concurring); and *State v. Garcia,* 141 Ariz. 97, 104–07, 685 P.2d 734, 740–43 (1984) (Feldman, J., dissenting). I do not retreat from the views expressed in these opinions. They have not been adopted by this court, however, and nothing in the facts of this case requires the majority to reconsider its analysis. In addition, even in my view, life in prison is not cruel and unusual for this defendant, under these circumstances. This defendant had several prior convictions and had just been placed on mandatory release when he committed the three robberies in question. There comes a time when one becomes a prisoner of one's history and actions.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

MOELLER, J., did not participate in the determination of this matter.