709 P.2d 513

**STATE of Arizona, Appellee,**

v.

**Clyde Terry SOWARDS and Roger Gene Ison, Appellants.**

**No. 6446–PR.**

Supreme Court of Arizona,
En Banc.

July 29, 1985.

Rehearing Denied Sept. 4, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, Stanley L. Patchell, Diane D. Hienton, and Roslyn Moore Silver, Asst. Attys. Gen., Phoenix, for appellee.

Wallace R. Hoggatt, Cochise County Public Defender, Bisbee, for appellant Sowards.

Robert J. Snyder, Jr., Sierra Vista, for appellant Ison.

HAYS, Justice.

Petitioner Roger Gene Ison was tried by a jury and convicted of two counts of theft, two counts of armed robbery, two counts of aggravated assault, and two counts of kidnapping. The jury[1] also found that these crimes were committed while Ison was on parole from a previous Texas conviction—possession of methadone. Pursuant to A.R.S. § 13–604.01(B) (offenses committed while released from confinement), Ison was sentenced to serve 6 months for each theft count, 10 years for each armed robbery count, 10 years for each aggravated assault count, and 14 years for each kidnapping count. The trial court ordered concurrent sentences. Ison appealed.

The Court of Appeals, 147 Ariz. 185, 709 P.2d 542, affirmed six of these counts. The two theft counts were necessarily reversed. Ison was convicted of robbery and

thus could not, in addition, be convicted of the lesser-included offense of theft.

The Court of Appeals also found insufficient evidence to support imposition of A.R.S. § 13–604.01(B). While the state was able to prove that Ison had been committed to a two-year term at the Texas Department of Corrections, there was no evidence offered to explain Ison's presence in Arizona one year after the imposition of this sentence. The court noted that Ison's presence could have been due to parole, early release, commutation, or even pardon. Thus, the Court of Appeals reversed Ison's sentence. It indicated that on remand the state could offer additional evidence to prove Ison's parole status.

Ison petitioned this court for review. He contends that he may not be resentenced pursuant to A.R.S. § 13–604.01(B). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and 17 A.R.S. Rules of Crim. Proc., Rule 31.19.

We address only one issue:
Has the double jeopardy clause been violated when the Court of Appeals finds insufficient evidence to support the trial court's imposition of A.R.S. § 13–604.-01(B), and then remands to allow reconsideration of this issue with presentation of additional evidence?

## FACTS

During the afternoon of May 20, 1983, The Blossom Flower Shop in Benson, Arizona, was robbed. About 3:00 that afternoon, Roger Gene Ison and two other men, Clyde and Robert Sowards, entered the shop. They asked the proprietor, Charlene Smith, if she had any plants. Smith became suspicious when the men ignored the plants but appeared keenly interested in the layout of her store. Fearing for her safety, Smith tried to call a neighbor. As she dialed, Clyde Sowards grabbed her hand and slammed the phone back into its cradle. Sowards told her "you're not calling anybody." When she tried to wrench

---

1. Determination of whether a person falls within A.R.S. § 13–604.01 is for the trial judge. See discussion *infra*.

loose, Sowards put a knife against her left breast and told her to "keep still."

The men went through the shop's cash box. During this time the phone rang. When Smith automatically reached to answer, Sowards struck her on the side of her head, grabbed her hair and shook her head. He warned, "Now leave that phone alone, leave it alone. You're not talking to anybody."

Sowards told Smith he wanted her car keys. Ison went through her purse. Sowards grabbed her wrist and told her, "Come on, we're going for a little ride." Smith pleaded, "Please don't take me with you. Please leave me here." Sowards told his brother and Ison, "Take the van around to the back, we'll take her through the back and put her in the van." Smith fought hysterically. She later testified, "I was terrified. I was really sick because at that point I really realized that I might never see my family again." Apparently, Sowards changed his mind. He told his men to put her in the restroom and bind her hands and legs.

About this time, Smith's cousin, Frank Wells, entered the store. He was immediately captured. The men took his wallet, pushed him into the restroom, bound him, and laid him next to Smith. One of these men instructed the victims to keep quiet and do nothing for 30 minutes.

Shortly before this robbery occurred, one of Smith's neighbors, Michael Hoskinson, noticed three strangers outside the Blossom Shop. He watched as they walked directly into the store. They were not the type of men who usually purchased flowers. After waiting a few minutes, he tried to call Smith. He heard the phone come off the receiver, some mumbling, and then the line went dead. He called the Benson police.

Officer Eric Kemp was the first to enter the store. He was dressed in plainclothes and wished to unobstrusively discover whether anything was wrong. Upon entering, he noticed one of the three men, Robert Sowards, squatting over a pair of bare feet. Sowards had red floral ribbon in his hands and appeared to be tying up someone. When Officer Kemp drew his off-duty weapon, Sowards fled out of the shop's rear door. Kemp called for his partner, who was waiting outside, and then pursued Sowards. All three men were eventually captured. The victims, Smith and Wells, were released.

## DOUBLE JEOPARDY

Petitioner claims that if, on remand, the trial court is permitted to resentence him pursuant to A.R.S. § 13–604.01(B) and to hear additional evidence concerning whether or not he was on parole at the time these crimes were committed, then he shall be twice subjected to jeopardy for the same offense. U.S. Const. amend. V. We disagree.

■ That a person may not be tried twice for the same crime is ancient law. *See United States v. Jenkins,* 490 F.2d 868, 870–71 (2nd Cir.1973) (quoting Demosthenes—355 B.C.), *aff'd,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). This proscription against double jeopardy extends not only to trial court acquittals but also to appellate reversals based on insufficient evidence. In other words, if a trial court convicts a defendant and that conviction is reversed on appeal for insufficient evidence, then that defendant may not be retried a second time for that same offense. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). This rule has also been extended to capital sentencing hearings that bear the hallmarks of a trial on guilt or innocence. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). The dispositive inquiry in this case is whether a noncapital sentencing hearing pursuant to A.R.S. § 13–604.01(B) bears the hallmarks of a trial on guilt or innocence. We believe it does not.

■ When A.R.S. § 13–604.01(B) is invoked, there is a separate sentencing hearing, but we believe that this hearing does not resemble a trial for the purposes of double jeopardy. In making this assessment we look to a number of factors. First, the trial judge alone decides the issue

of release status.[2] *State v. Turner,* 141 Ariz. 470, 475, 687 P.2d 1225, 1230 (1984); *State v. McNair,* 141 Ariz. 475, 485, 687 P.2d 1230, 1240 (1984). While this fact alone is not in any sense dispositive, *cf. Arizona v. Rumsey, supra,* 467 U.S. at ——, 104 S.Ct. at 2310, 81 L.Ed.2d at 170 (1984), we believe that it, along with the following factors, should be taken into consideration in determining whether a sentencing procedure bears the hallmarks of a trial.

■ Second, unlike the sentencing procedure in either *Bullington v. Missouri, supra,* or *Arizona v. Rumsey, supra,* sentencing pursuant to A.R.S. § 13–604.01(B) permits the trial judge to exercise sentencing discretion. *See* A.R.S. § 13–604.01(B) (requiring trial judge to sentence defendant to *not less than* presumptive term).

Third, the issue to be decided under A.R.S. § 13–604.01(B) involves only one factual determination: was the defendant on probation, parole, work furlough, or any other form of release at the time he committed the crime? This question typically can be resolved by referring to certified copies of imprisonment records and thus is not, in any sense, like a full-blown trial on guilt or innocence.

■ Finally, in these sentencing hearings, the standard of proof is not "beyond a reasonable doubt." That standard is the hallmark of a criminal trial. In these hearings, the trial judge's findings need only be supported by reasonable evidence. *State v. Turner, id.* 141 Ariz. at 475, 687 P.2d at 1230.

■ We distinguish this type of sentencing hearing from those capital sentencing hearings in which there is a separate and distinct penalty phase, in which there is strictly limited discretion, and in which the "*beyond* a reasonable doubt" standard applies. *See* A.R.S. § 13–703; *cf. State v. McMurtrey,* 143 Ariz. 71, 72–73, 691 P.2d 1099, 1100–01 (1984) (state must prove aggravating circumstances beyond a reasonable doubt). In those types of proceedings,

once the defendant is convicted of first degree murder and sentenced to life imprisonment, he is impliedly acquitted of the death penalty and may not be resentenced to that most severe of punishments. *Arizona v. Rumsey, supra.* The rationale behind those cases is that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity ... (citation omitted).

*Bullington v. Missouri, supra,* 451 U.S. at 445, 101 S.Ct. at 1861, 68 L.Ed.2d at 282. This rationale is inapplicable in the present case. *Cf. United States v. DiFrancesco,* 449 U.S. 117, 136, 101 S.Ct. 426, 437, 66 L.Ed.2d 328, 345–46 (1980). Ison was originally sentenced by the trial court pursuant to A.R.S. § 13–604.01. Remand for resentencing pursuant to that statute, thus, does not expose Ison to any qualitatively different punishment such as was the case in *Rumsey.*

Accordingly, we hold that on remand to the trial court, Ison may be resentenced pursuant to A.R.S. § 13–604.01(B). The state may produce whatever additional evidence it has concerning Ison's release status. The Court of Appeals did not violate the double jeopardy clause in ordering resentencing.

Remanded to the trial court for resentencing in conformance with this opinion.

HOLOHAN, C.J., and CAMERON and FELDMAN, JJ., concur.

GORDON, Vice Chief Justice (specially concurring):

While I agree with the result reached by the majority, I believe it should be emphasized that double jeopardy does not apply to this case not because of who makes the sentencing decision but because of the nature of the sentencing decision to be made under A.R.S. § 13–604.01(B).

---

**2.** The trial judge in this case submitted the issue of Ison's release status to the jury. Such submission was harmless error and merely afford-

ed Ison a benefit to which he was not entitled. We do not believe it relevant to deciding the issues in this case.

In *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328, 344 (1980) the Court stated that its decisions in the sentencing area "clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal." Thus, in the typical case, double jeopardy does not apply to the imposition of a sentence.

The sentencing procedure in the instant case more resembles a typical sentencing procedure than a death sentencing procedure because it is,

"determined in large part on the basis of information, such as the sentence report, developed outside the courtroom. It is purely a judicial determination, and much that goes into it is the result of inquiry that is nonadversary in nature."

*United States v. DiFrancesco*, 449 U.S. at 136–137, 101 S.Ct. at 437, 66 L.Ed.2d at 345–346.

Based upon various information, the judge may find or not find that the defendant was on probation, parole, work furlough, or any other release from confinement. Whether the defendant is on such a release is not open to nearly as much debate as his guilt or innocence of a crime or whether he deserves or does not deserve the death penalty. It clearly appears that "much that goes into [the 604.01(B) decision] is nonadversary in nature." Furthermore, as stated by the majority, the trial court's sentencing choice under § 604.01(B) involves much more judicial discretion than does the stark life or death decision in a death sentencing proceeding. This broad sentencing choice is characteristic of typical sentencing proceedings to which double jeopardy has no application. *United States v. DiFrancesco, supra.*

I also agree with the majority that the lower standard of proof in the § 604.01(B) hearing renders it less like a trial type proceeding. As pointed out in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), this reasonable doubt standard requires the state to prove its case much like in a trial. *Bullington, supra*, at 444, 101 S.Ct. at 1861, 68 L.Ed.2d

at 282. In addition, the reasonable doubt standard is the same as used at the trial of guilt or innocence. *Id.* at 441, 101 S.Ct. at 1859, 68 L.Ed.2d at 280.

Furthermore,

"[t]he state's use of this standard indicates that, as has been said generally of the criminal case, 'the interests of the defendant are of such magnitude that * * * they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment * * *. [O]ur society imposes almost the entire risk of error upon itself.' *Addington v. Texas*, 441 U.S. 418, 423–424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979)."

*Id.* at 441, 101 S.Ct. at 1859, 68 L.Ed.2d at 280.

Though implied in the majority opinion, I also wish to emphasize that today's holding should not apply to A.R.S. § 13–604.01(A). We were presented only with the § 604.01(B) issue and we should wait until the appropriate time to rule upon the double jeopardy consequences of § 604.01(A).

Thus, I specially concur in the majority's opinion.