37 P.3d 437

**STATE of Arizona, Appellee,**

v.

**Adam Matthew COX, Appellant.**

No. 1 CA–CR 00–0812.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 10, 2002.

Janet Napolitano, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section, Phoenix, and Kerri L. Chamberlin, Assistant Attorney General, Tucson, Attorneys for Appellee.

Maricopa County Public Defender by Edward F. McGee, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

NOYES, Judge.

¶ 1 Adam Matthew Cox ("Appellant") appeals his convictions and sentences for kidnaping with intent to promote, further, or assist criminal conduct by a criminal street gang, a class two felony, and aggravated assault with intent to promote, further, or assist criminal conduct by a criminal street gang, a class six felony. The victim was kidnaped and assaulted because he wanted to end his membership in the gang. Appellant argues that the court erred by (1) precluding cross-examination of the victim regarding the nature of his prior felony conviction, (2) incorrectly defining "criminal street gang," (3) finding that Appellant committed the offenses while released from confinement within the meaning of Arizona Revised Statutes ("A.R.S.") section 13–604.02(B) (2001), and (4) failing to grant a jury trial on the § 13–604.02(B) allegation. Because we find reversible error only on issue (3), we affirm the convictions, vacate the sentences, and remand for re-sentencing. We also hold that a

jury trial is not required on the § 13–604.02(B) allegation.

## DISCUSSION

*1. Limitation of Cross–Examination of the Victim*

¶ 2 Appellant asserts that the trial court erred because it did not permit him to cross-examine the victim regarding the specific nature of the victim's prior felony conviction.

¶ 3 The victim was the State's first witness. He appeared in "jail clothes," and the State established that he was a former gang member and that he had a prior felony conviction. The State did not question the victim about the nature of his prior conviction, and it moved to preclude cross-examination on that subject.

¶ 4 Appellant's counsel argued that he should be allowed to establish that the victim's prior conviction was for aggravated robbery, because the nature of the conviction would tend to show that the victim was not out of the gang "like he claims that he was or wanted to be." The State responded that the conviction was for a robbery that occurred in March 1999, when the victim admitted being a gang member. The trial court ruled that Appellant could not "get into the nature of the offense itself" when cross-examining the victim.

¶ 5 A trial court's decision to limit cross-examination is reviewed for a clear abuse of discretion. *See State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997); *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). "Although the right to cross-examine a witness is vital to the right of confrontation, the trial court reserves discretion to curtail the scope of cross-examination to within reasonable limits." *State v. Doody*, 187 Ariz. 363, 374, 930 P.2d 440, 451 (App.1996). We review restriction of the "scope of cross-examination on a case-by-case basis to determine whether the court unduly inhibited the defendant's ability to present information bearing on issues or on the credibility of witnesses." *Id.* "[W]e will not disturb the court's ruling absent a clear showing of prejudice." *Id.*

¶ 6 Rule 609(a) of the Arizona Rules of Evidence provides that, for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Here, the trial court made that determination and admitted that evidence. That the court did not admit evidence of the nature of the prior conviction did not damage Appellant's ability to argue that the victim was a convicted felon who was less worthy of belief for that reason, and it did not prevent Appellant from arguing that the victim was a gang member in March 1999, for the victim admitted as much. We find no abuse of discretion in the trial court's ruling on this issue.

### 2. The "Criminal Street Gang" Instruction

¶ 7 Appellant argues that the trial court erred by giving the jury the following instruction:

"Criminal Street Gang" means an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any criminal act including the offenses charged in this case and which has at least one individual who is a criminal street gang member.

¶ 8 We review *de novo* whether a jury instruction properly stated the law. *State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997). "The failure to object to an instruction either before or at the time it is given waives any error, absent fundamental error." *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). Appellant did not object to this instruction.

¶ 9 We agree that the instruction contained an error. The law defines "criminal street gang" as "an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation *of any felony act*

and who has at least one individual who is a criminal street gang member." A.R.S. § 13–105(7) (2001) (emphasis added). The trial court's instruction said "any criminal act" when it should have said "any felony act." This error was harmless.

¶ 10 An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). The jury found that Appellant committed the two charged felonies, kidnaping and aggravated assault, "with the [specific] intent to promote, further or assist any criminal conduct by a criminal street gang." The State does not have to prove a "criminal street gang" allegation with felonious activity other than the charged offenses. The offenses on which Appellant was found guilty at trial proved the "any felony act" element of § 13–105(7), and this trial contained no evidence of crimes other than felonies. No reasonable possibility exists that this jury might have based its "criminal street gang" decision on crimes other than felonies.

### 3. The State's § 13–604.02(B) Allegation

¶ 11 The trial court found that Appellant committed the present offenses while on parole from conviction of a felony offense, and it sentenced him according to A.R.S. § 13–604.02(B), which provides that a person convicted of any felony offense while on any sort of release from confinement for a felony offense shall be sentenced to a term of not less than the presumptive sentence authorized for the current offense.[1] Because Appellant did not object in the trial court to being sentenced pursuant to § 13–604.02(B), we review the issue only for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

¶ 12 We conclude that the trial court clearly erred when it found the § 13–604.02(B) allegation proved, for the record reflects no evidence to support the allegation. On appeal, the State "concedes that the record is unclear" as to Appellant's release sta-

---

1. In Appellant's case, the minimum sentence for each offense, with one prior felony conviction, was the presumptive term plus three years for promoting, furthering, or assisting criminal conduct by a criminal street gang. *See* A.R.S. § 13–604(T) (2001).

tus at the time of the present offenses. The record is therefore equally unclear as to why the State filed a pretrial allegation that Appellant was an "offender on parole" when he committed the present offenses. The record, however, does reflect that Appellant's probation in the prior case was revoked on February 1, 1999, and he was sentenced to a prison term of .75 years (273.75 days), with credit for 188 days of pre-sentence incarceration. The sentence was ordered to begin on February 1, 1999, which means that it expired on April 27, 1999, before Appellant committed his present offenses in August 1999.

¶ 13 Appellant was convicted of offenses for which the legislature has mandated sentencing ranges that include mitigated sentences. The trial court, however, sentenced Appellant pursuant to § 13–604.02(B), which does not allow mitigated sentences. Appellant's sentences did not exceed the maximum permitted by law for his offenses, but the sentencing process was fundamentally flawed because the trial court used sentencing ranges other than those mandated for the offenses in question. "The failure to impose a sentence in conformity with mandatory sentencing statutes makes the resulting sentence illegal." *State v. Carbajal,* 184 Ariz. 117, 118, 907 P.2d 503, 504 (App.1995). An illegal sentence constitutes fundamental error, *State v. Bouchier,* 159 Ariz. 346, 347, 767 P.2d 233, 234 (App.1989), that will be reversed on appeal despite a lack of objection in the trial court. *State v. Canion,* 199 Ariz. 227, 230, ¶ 10, 16 P.3d 788, ·791 (App.2000) (review denied Apr. 24, 2001).

¶ 14 Assuming without deciding that this fundamental error in the sentencing process is subject to a harmless error analysis, we conclude that the error was not harmless in this case. Both the court and the prosecutor seemed to think that the minimum sentence allowed by § 13–604.02(B) was inappropriately harsh on Appellant. At sentencing, the trial court commented several times that it had no discretion to impose less than the presumptive sentences, and the prosecutor at one point stated, "I know that the Court felt that a lesser sentence was appropriate. And if that were available, I don't think that I would disagree completely

that a lesser sentence would be appropriate in this case." The court then sentenced Appellant to 12.25 years in prison on Count 1 and a concurrent term of 4.75 years on Count 2.

¶ 15 On remand, the State may retry its § 13–604.02(B) allegation if it has any evidence to support it. *State v. Sowards,* 147 Ariz. 156, 159, 709 P.2d 513, 516 (1985); *State v. Martinez,* 172 Ariz. 437, 440, 837 P.2d 1172, 1175 (App.1992).

*4. Right to Jury Trial on the § 13–604.02(B) Allegation*

¶ 16 Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Appellant argues that he is entitled to a jury trial on the § 13–604.02(B) allegation. We will decide this issue because the parties have briefed it, and it might arise on remand. *See State v. Donald,* 198 Ariz. 406, 415, ¶ 29, 10 P.3d 1193, 1202 (App.2000) (review denied Mar. 20, 2001), *cert. denied by Arizona v. Donald,* —— U.S. ——, 122 S.Ct. 63, 151 L.Ed.2d 30 (2001). We hold that a jury trial is not required on the § 13–604.02(B) allegation.

¶ 17 The relevant principle is stated in *Apprendi,* as follows:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." 526 U.S. at 252–253, 119 S.Ct. 1215 (opinion of STEVENS, J.); see also *id.,* at 253, 119 S.Ct. 1215 (opinion of SCALIA, J.).

530 U.S. at 490, 120 S.Ct. 2348 (footnote omitted). The *Apprendi* Court advised that it was not overruling *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91

L.Ed.2d 67 (1986), which upheld a statute that permitted a trial judge to find, by a preponderance of the evidence, a fact triggering a mandatory minimum sentence. *Apprendi*, 530 U.S. at 485–86 & 487 n. 13, 120 S.Ct. 2348 (citing *McMillan*, 477 U.S. at 86–88, 106 S.Ct. 2411). The Court stated, "We limit [*McMillan*'s] holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation identified in the *McMillan* opinion itself." *Id.* at 487 n. 13, 120 S.Ct. 2348.

■ ¶ 18 Because proof of a § 13–604.02(B) allegation increases the statutory minimum penalty but not the statutory maximum, *Apprendi* does not require that the allegation be decided by a jury beyond a reasonable doubt; rather, the trial judge can decide the § 13–604.02(B) allegation by clear and convincing evidence.[2] Our holding is consistent with existing Arizona law on the "release status" issue. In *State v. Hurley*, 154 Ariz. 124, 132, 741 P.2d 257, 265 (1987), the supreme court held that "[t]he [release] status is a sentencing factor which may be found by the court at the sentencing hearing."[3]

## CONCLUSION

¶ 19 The convictions are affirmed, the sentences are vacated, and the matter is remanded for re-sentencing.

CONCURRING: PHILIP HALL, Judge.

2. *See United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir.2001) ("Because *Apprendi* only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the [Sentencing G]uideline range to shift within the statutory range."); *United States v. Ellis*, 241 F.3d 1096, 1104 (9th Cir.2001) ("'[Appellant] fails to satisfy the threshold condition of *Apprendi* that the actual sentence imposed be longer than the maximum sentence for the crime for which a defendant has been validly convicted.").

3. In *Hurley*, the State alleged, pursuant to § 13–604.02(A), that the defendant committed a dangerous offense while on release following a felony conviction. *Id.* at 126, 741 P.2d at 259. That allegation increased the statutory maximum penalty to mandatory life imprisonment without possibility of parole for twenty-five years. *Id.* *Hurley*, which was decided before *Apprendi*, held that the allegation was a sentencing factor that could

BARKER, Judge, concurring specially.

¶ 20 I join fully in the foregoing opinion, but write separately as to the *Apprendi* issue.

¶ 21 *Apprendi* is new, controversial, and subject to much discussion in the legal community. *E.g.* Stephanos Bibas, *Judicial Fact Finding and Sentence Enhancements in a World of Guilty Pleas*, 110 YALE L.J. 1097, 1123 (2001) (noting "massive practical problems that the elements rule would cause at jury trials, at sentencing, and on habeas corpus"); Erwin Chemerinsky, *Expert Advice: Apprendi, Bankruptcy and Disability Law*, CALIFORNIA LAWYER, Feb. 2001, at 31 ("The only certainty at this point is that every lawyer who practices criminal law and every judge who hears criminal cases must deal with *Apprendi* on a regular basis from here on.").

¶ 22 It is clear that the contours of the rule *Apprendi* established, and the exception it preserved, have not been defined. My analysis of *Apprendi*, as applied to a release status determination under A.R.S. § 13–604.02(B), goes beyond that set forth in the majority opinion. Thus, while I agree with the foregoing opinion, and join in it fully, I also set forth my analysis here.

¶ 23 As the majority notes, *Apprendi* is not applicable to A.R.S. § 13–604.02(B) as there

be decided by the judge by clear and convincing evidence. *Id.* at 130, 741 P.2d at 263. The Arizona Supreme Court reached a different conclusion in *State v. Powers*, 154 Ariz. 291, 742 P.2d 792 (1987), which involved the same increased statutory maximum penalty as in *Hurley*. In *Powers*, however, the § 13–604.02(A) allegation was that defendant committed the current offense while on "escape from confinement." 154 Ariz. at 292, 742 P.2d at 793. The court concluded that, because "escape" was a separate crime and not just a release status, defendant was entitled to a trial by jury on that allegation under the reasonable doubt standard. *Id.* at 294, 742 P.2d at 795. The court based its decision on "independent state grounds" and the Arizona Constitution. *Id.* at 294–95, 742 P.2d at 795–96. How to reconcile *Hurley*, *Powers*, and *Apprendi* is a problem we need not try to resolve here, for they do not conflict on the facts in the present case; they all support the result reached here.

is no increase in the statutory maximum. *Majority Opinion* at ¶¶ 16–18. I also find *Apprendi* to be inapplicable for a more fundamental reason: a finding of being on parole[4] under § 13–604.02(B) has the same underlying foundation as the finding of a prior conviction under the statute at issue in *Almendarez–Torres*[5] that was expressly excluded from the rule announced in *Apprendi*. Thus, I would find *Apprendi* inapplicable here even if the sentencing scheme for § 13–604.02(B) provided for an increase in the statutory maximum. A release status determination under § 13–604.02(B) falls within the exception for recidivist statutes approved in *Apprendi*.

### The Various Statutes

¶ 24 The statutory scheme at issue in *Apprendi* was a New Jersey "hate crime" statute.[6] *Apprendi*, 530 U.S. at 468–69, 120 S.Ct. 2348. Under that statute, the trial court was charged with determining whether the conduct forming the basis of the crime was done "with a purpose to intimidate ... because of race" or other specified categories. *Id.* If proved by a preponderance of the evidence, the trial judge could increase the penalty beyond what the statute otherwise provided. *Id.* The New Jersey sentencing statute was based on facts inextricably intertwined with those of the charged offense.

¶ 25 On the other hand, the statute at issue in *Almendarez–Torres*, which *Apprendi* left in place, provided for an increase in the statutory sentence if a defendant was proved to have a prior felony conviction.[7] *Almenda-*

*rez–Torres*, 523 U.S. at 229, 118 S.Ct. 1219. It was a recidivist statute: "At the outset, we note that the relevant statutory subject matter is recidivism." *Id.* at 230, 118 S.Ct. 1219. Additionally, the inquiry for determining whether a defendant had a prior felony conviction was factually distinct from that for the charged offense.

¶ 26 Lastly, the statute here, § 13–604.02(B), provides for an enhanced sentence if another offense is committed "while the person is on probation for a conviction of a felony offense or parole, work furlough, community supervision or any other release or escape from confinement for conviction of a felony offense...." A.R.S. § 13–604.02(B). The "statutory subject matter" of A.R.S. § 13–604.02(B) is likewise recidivism. The entire basis for a sentencing factor predicated upon release status—such as being on parole as alleged here—is that a defendant has committed a subsequent offense while *already on* some form of sanction for a prior offense. This is recidivism. The determination of release status is also factually distinct from the determination of the charged offense.

¶ 27 It is apparent that the statute here is much closer in kind to the statute for which *Apprendi* preserved the exception than to the statute for which *Apprendi* established the rule.

### *The Apprendi Rule and Exception*

¶ 28 In dealing with the New Jersey hate crime statute, *Apprendi* stopped short of announcing a full-scale rule providing that *any fact* that increased the statutory maximum

---

4. The release status under § 13–604.02(B) which the state alleges is that defendant was on parole.

5. *Almendarez–Torres v. United States*, 523 U.S. 224, 229–235, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

6. The New Jersey statute provides in pertinent part as follows:

   The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds that
   ....
   The defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color,

gender, handicap, religion, sexual orientation or ethnicity.
N.J. Stat. Ann. § 2C:44–3(e). The "extended term of imprisonment" provided for a statutory maximum in excess of what would otherwise be applicable.

7. The pertinent portion of the statute increased the statutory maximum for an alien "(1) whose deportation was subsequent to a conviction for [certain misdemeanors], or a felony (other than an aggravated felony) ... or (2) whose deportation was subsequent to a conviction for commission of an aggravated felony...." 8 U.S.C. § 1326(b).

must be tried to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The exception that *Apprendi* carved out was based on the statute in *Almendarez–Torres*. *Id.* at 489–90, 120 S.Ct. 2348. The most frequently cited passage states:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* at 490, 120 S.Ct. 2348. I recognize the language above states that "[o]ther than the fact of a prior conviction," any fact that increases the statutory maximum is subject to the announced rule. *Id.* The context of this language, however, is the uncontroverted fact that the statute in *Almendarez–Torres* was based on a prior conviction. *Apprendi* left *Almendarez–Torres* in place. Other language in *Apprendi* supports the view that the rationale underlying the *Almendarez–Torres* exception must be considered to determine whether a statute falls within or without that exception.

¶ 29 For instance, in *Apprendi* the State of New Jersey relied on *Almendarez–Torres* to attempt to exclude its hate crime statute from the rule *Apprendi* announced. Rather than rebuff the argument with a curt response that the exception only applies to "the fact of a prior conviction," the Court noted as follows:

> New Jersey's reliance on *Almendarez–Torres* is also unavailing. The *reasons supporting an exception from the general rule for the statute construed in that case do not apply to the New Jersey statute.*

530 U.S. at 496, 120 S.Ct. 2348 (emphasis added). Thus, like any exception, there are *reasons* for it. When the "reasons supporting an exception from the general rule" apply to a statute, logic suggests the exception

should be considered as to that particular statute. *Id.* The reasons for the exception did not apply to the New Jersey hate crime statute at issue in *Apprendi;* the reasons for the exception do apply to a release status determination under the recidivist statute at issue here.[8]

### *The Reasons for the Exception*

¶ 30 The reasons for the exception that are pertinent to the statute here include the following:

¶ 31 *i.) Recidivism.* That the *Almendarez–Torres* statute was based on recidivism was a key factor. *Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348 ("[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (quoting *Almendarez–Torres*, 523 U.S. at 243, 118 S.Ct. 1219)).

¶ 32 *ii.) A Factually Distinct Inquiry.* Another key factor was that the sentencing statute required evaluation of a set of circumstances that was distinct from the charged offense. *Apprendi*, 530 U.S. at 496, 120 S.Ct. 2348 ("Whereas recidivism 'does not relate to the commission of the offense' itself, New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.'" (quoting *Almendarez–Torres*, 523 U.S. at 244, 118 S.Ct. 1219)).

¶ 33 *iii.) Separate Procedural Safeguards.* The procedural safeguards inherent in recidivist statutes, i.e., the court proceedings undertaken in the prior criminal matter, were another rationale for the *Almendarez–Torres* exception. *Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348 (explaining that prior convictions "had been entered pursuant to proceedings with substantial procedural safeguards of their own").

¶ 34 Each of these bases for the exception carved out in *Apprendi* is applicable to a release status determination under § 13–

---

8. A determination of "escape" under § 13–604.02(B) requires a different analysis from the other factors listed in that statute. *State v. Powers*, 154 Ariz. 291, 742 P.2d 792 (1987) (holding that defendant had a right to trial by jury under a reasonable doubt standard on the issue of "escape" before sentencing court could use escape under § 13–604.02(B)). "Escape" is a separate, substantive offense. 154 Ariz. at 294, 742 P.2d at 795. "Escape" involves more than a release status determination. *Id.* Under our state constitution, a finding of escape was required to be made by a jury prior to *Apprendi. Id.* Escape is not at issue here. Release status, on the other hand, can be determined by the court upon a showing of clear and convincing evidence. *State v. Hurley*, 154 Ariz. 124, 132, 741 P.2d 257, 265 (1987).

604.02(B): (1) the statute is a recidivist statute based on a prior criminal offense involving the placement of defendant on probation, parole or some other statutorily defined restriction, (2) the inquiry as to whether defendant was on probation, parole or otherwise restricted is factually distinct from the inquiry involved in the "commission of the offense," and (3) there are procedural safeguards involved in placing a person on probation, parole or the other statutory restrictions specified. The procedural safeguards here also include the fact that placing an individual on probation would typically be done in open court with a court reporter present and an official record created to affirmatively show that the defendant either was or was not on probation.[9]

¶ 35 For these reasons, and those that follow, I find that a release status determination under § 13–604.02(B) falls within the exception that *Apprendi* expressly provides.

### Recent Arizona Court of Appeals Decision

¶ 36 I recognize that another department of this court has applied a contrary view of *Apprendi* in a similar case. *State v. Gross,* 201 Ariz. 41, 31 P.3d 815 (App.2001). In *Gross,* a different department of this court was asked to decide whether A.R.S. § 13–604(R)(2001) fell within the exception to *Apprendi*'s general rule. Section 13–604(R) increases the statutory maximum for an offense "while the person is released on bail or on the defendant's own recognizance on a separate felony offense or while the person is escaped from preconviction custody for a separate felony offense." A.R.S. § 13–604(R).

¶ 37 In considering *Apprendi* with regard to § 13–604(R), that department focused on the language from *Apprendi* that described the exception to the general rule as a "narrow" one. 201 Ariz. at 45, ¶¶ 17–19, 31 P.3d at 819. *Apprendi* does in fact call the exception "narrow." 523 U.S. at 490, 118 S.Ct. 1428. *Apprendi,* however, applies to fifty states with no doubt countless forms of sentencing statutes that increase statutory maximums based on a multitude of factors. The New Jersey hate crimes statute is but one example. With that broad statutory universe in mind, limiting the exception to statutes that meet the same criteria as the statute in *Almendarez–Torres* is indeed "narrow."

¶ 38 For instance, a brief sampling of Arizona's statutes reveals sentencing statutes that increase statutory maximums based on a wide variety of factors: the amount of drugs (A.R.S. § 13–3401(36) (2001)), the use of a deadly weapon (A.R.S. § 13–604(F) (1999)), the infliction of serious physical injury (*Id.*), the age of a victim (A.R.S. § 13–1404(B) (2001)), and promoting a criminal street gang (A.R.S. § 13–604(T) (1999)). This is only a partial listing. None of those statutes fall within the rationale for the exception that *Apprendi* approves. The restrictions imposed by *Apprendi,* based on the *reasons* for the exception set forth above, truly work to create a "narrow exception."

¶ 39 Thus, differing from those who authored *Gross,* I believe that the proper course to follow in determining whether § 13–604.02(B), § 13–604(R), or any other statute falls within the exception carved out in *Apprendi,* is to analyze the particular stat-

---

9. In *State v. Hurley,* 154 Ariz. 124, 127, 741 P.2d 257, 260 (1987), the Arizona Supreme Court dealt with the identical statutory language: "committed while the person is on probation for a conviction of a felony offense or parole, work furlough, community supervision or any other release." A.R.S. § 13–604.02(A). The court noted that objective, documentary evidence is typically controlling in determining a defendant's release status when a subsequent offense is committed:

> The question of release status, unlike a subjective determination of intent, ordinarily will require objective evidence and will entail few, if any, disputed facts. Documents ordinarily will be the best evidence of status.

154 Ariz. at 127, 741 P.2d at 263. *Hurley* held, in a constitutional challenge based on *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), that proof by clear and convincing evidence to the court was sufficient under the constitution. *Hurley,* of course, is a pre-*Apprendi* decision and subject to analysis under *Apprendi.* Without engaging in a full discussion of the *Hurley* rationale, I believe that the *result* reached in *Hurley* falls within the *Apprendi* exception for the reasons set forth in this concurrence. The foregoing excerpt as to the *type of evidence* typically utilized in determining release status is accurate regardless of the view one takes of *Apprendi.*

ute in terms of the *reasons or factors* that underlie the exception that *Apprendi* affords. Those factors include (1) a statute based on recidivism, (2) facts distinct from the underlying offense, and (3) separate procedural safeguards. Courts must analyze the basis for the sentencing statute in determining whether a particular statute falls within the exception or is subject to the general rule.

### The Contours of the Exception

¶ 40 As stated at the outset, *Apprendi* leads through uncharted waters. Bibas, *supra* ¶ 21 at 1123. One of the difficulties in applying *Apprendi* to other sentencing statutes is that the New Jersey hate crimes statute on which *Apprendi* is based bears little resemblance to other sentencing statutes to which the *Apprendi* rule arguably applies. Because *Apprendi* is so recent, there has been little opportunity to establish the contours of either the *Apprendi* rule or the exception it provides.

¶ 41 A statute with characteristics such as § 13–604.02(B) (or § 13–604(R) for that matter) was simply not at issue in *Apprendi*. Other than the fact that § 13–604.02(B) affects sentencing, it bears little relationship to the New Jersey hate crimes statute at issue in *Apprendi*. It bears a closer resemblance to the *Almendarez–Torres* statute on virtually any criteria, not just the factors discussed above.

¶ 42 Thus, in addition to the foregoing analysis as to the scope of the *Almendarez–Torres* exception, I believe it is important to bear in mind that the United States Supreme Court has not yet ruled on, and did not consider in *Apprendi*, statutes that are far closer to the recidivist statute in *Almendarez–Torres* than the hate crimes statute from New Jersey. The contours of the exception set by the five-member majority have simply not been fully established. As Chief Justice Marshall observed long ago, the general expressions in a case "are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821). He cautioned that if expressions "go beyond the case they may be respected but *ought not to control the judgment in a subsequent suit, when the very point is presented for decision.*" *Id.* (emphasis added).

¶ 43 While I am loathe to consider (and do not suggest) that *Apprendi* could not establish the general rule that it did, it bears repeating that *Apprendi* specifically reserved an exception. When the statute being presented for consideration (such as § 13–604.02(B)) more closely resembles the statute *Apprendi* preserved than the statute it struck, I believe there is wisdom in considering Chief Justice Marshall's maxim that we have not had a decision "when the very point is presented for decision." *Cohens*, 19 U.S. (6 Wheat.) at 399. Thus, there may be other factors that come into play in establishing the contours of the *Almendarez–Torres* exception to the *Apprendi* rule. These will depend on the specific statute at issue. The legislature's historical reasons for a particular statute, though not necessary to develop here, may also be a key factor to consider in determining whether a statute falls within the *Almendarez–Torres* exception.

### Conclusion

¶ 44 These are my additional reasons for finding *Apprendi* inapplicable to § 13–604.02(B).