92 P.3d 437

STATE of Arizona, Appellee,

v.

Royce James DEWAKUKU, Appellant.

No. 1 CA–CR 03–0280.

Court of Appeals of Arizona,
Division 1, Department C.

June 29, 2004.

212

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Katia Méhu, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, By Susan L. Corey, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

GARBARINO, Judge.

¶ 1 We hold that a defendant charged with a dangerous offense alleged to have been committed while the defendant was on release from confinement after being convicted of a felony offense pursuant to Arizona Revised Statutes (A.R.S.) section 13–604.02(A)(2001) is entitled to a trial by jury on the issue of release. For the following reasons, we affirm the defendant's conviction. Because we find that his admission to his release status was not knowing and voluntary, we vacate the defendant's sentence and we remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 "We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant." *State v. Fontes,* 195 Ariz. 229, 230, ¶ 2, 986 P.2d 897, 898 (App.1998) (quoting *State v. Nihiser,* 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App.1997)).

¶ 3 The defendant and a companion approached two women, R.N. and E.O., who were sitting in a neighborhood park. The women were relaxing after playing basketball. The lights on the court were off, but there were lights on in other areas of the park. The defendant asked the women if either knew a man named Kerwin. R.N. said she did. However, when asked by the defendant about Kerwin's whereabouts, R.N. said she did not know. After several failed attempts to obtain Kerwin's location from R.N., the defendant pulled out a knife and held it to R.N.'s neck. After several seconds, the defendant let her go and he and his companion left. R.N. and E.O. left the park and contacted the police. The defendant was promptly arrested and charged by information with aggravated assault, a class 3 felony. *See* A.R.S. § 13–1203(A)(2) (2001), – 1204(A)(2), (B) (Supp.2003).[1] The State further alleged that the offense was dangerous. *See* A.R.S. § 13–604(P) (Supp.2003).

¶ 4 Prior to trial, the State amended the information to allege three historical prior felony convictions for aggravated assault, misconduct involving weapons, and possession of drug paraphernalia. Pursuant to A.R.S. § 13–604.02(A), the State also alleged that the defendant committed the present assault while on release from the prior felony conviction for possession of drug paraphernalia. The jury found the defendant guilty of aggravated assault and also found that the offense was dangerous. In exchange for the State's agreement to withdraw its allegation of the defendant's three historical prior felony convictions, the defendant agreed to admit the State's allegation that he was on release at the time of the assault. There was no written agreement in compliance with Rule 17.4(b) of the Arizona Rules of Criminal Procedure. The defendant admitted that he had been released to community service and that he had absconded. The trial court accepted the defendant's admission in open court, found that he was on release at the time he committed the assault, and sentenced him to ten years' "flat time" imprisonment. *See* A.R.S. §§ 13–604(I) (Supp.2003), –604.02(A). The defendant filed a timely notice of appeal.

This Court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031, and –4033 (2001).

## ISSUES

¶ 5 The defendant raises the following issues on appeal:

1) Whether the sentencing provision contained in A.R.S. § 13–604.02(A), which allows a twenty-five percent increase in the statutory maximum based on the trial court finding two substantial aggravating circumstances, violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000);

2) Whether the trial court erred by mistakenly advising the defendant that he was not entitled to a trial by jury on the State's allegation of his release status and, thus, the defendant's admission was not knowing and voluntary; and

3) Whether the trial court erred by denying the defendant's challenge to five of the State's peremptory strikes pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

## DISCUSSION

I. *The Application of Apprendi to A.R.S. § 13–604.02(A)*

¶ 6 Section 13–604.02(A) provides the sentencing scheme for dangerous offenses committed while on release from confinement. The statute provides that

a person convicted of any felony offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction on another of serious physical injury if committed while the person is on probation for a conviction of a felony offense or parole, work furlough, community supervision or any other release or escape from confinement for conviction of a felony

---

1. Wherever possible, this decision cites to the current versions of the Arizona Revised Statutes, which are essentially the same as those in effect at the time the offense was committed.

offense shall be sentenced to imprisonment for not less than the presumptive sentence authorized under this chapter *and is not eligible for suspension or commutation or release on any basis until the sentence imposed is served.* If the person committed the offense while on release or escape from confinement for a conviction of a serious offense as defined in § 13–604, an offense resulting in serious physical injury or an offense involving the use or exhibition of a deadly weapon or dangerous instrument, the person shall be sentenced to the maximum sentence authorized under this chapter *and is not eligible for suspension or commutation or release on any basis until the sentence imposed is served.* If the court finds that at least two substantial aggravating circumstances listed in § 13–702, subsection C apply, *the court may increase the maximum sentence authorized under this chapter by up to twenty-five per cent.*

A.R.S. § 13–604.02(A) (emphasis added).

¶ 7 The defendant contends that the issue whether he was on release status at the time he committed the current dangerous offense was a matter to be determined by the jury. Although the defendant did not object to the determination by the court, a sentence that is improperly imposed can be reversed on appeal despite the lack of an objection. *See State v. Canion,* 199 Ariz. 227, 230, ¶ 10, 16 P.3d 788, 791 (2000).

¶ 8 The defendant's argument is based on *Apprendi* and its progeny. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494, 120 S.Ct. 2348. Section 13–604.02(A) permits an increase in

the maximum sentence of up to twenty-five percent if the trial court finds at least two substantial aggravating circumstances contained in A.R.S. § 13–702(C) (Supp.2003). Thus, the allegation that the defendant committed a dangerous offense while on release exposes him to a possible twenty-five percent increase in the maximum sentence, as well as requiring that the sentence be served as flat time. A.R.S. § 13–604.02(A). The defendant argues that *Apprendi* mandates that a defendant's release status be submitted to and determined by the jury, rather than the court. The State contends that the finding of release status may be made by the court because such a finding does not increase the prescribed statutory maximum. We disagree with the State.

¶ 9 In *State v. Gross,* 201 Ariz. 41, 31 P.3d 815 (App.2001), this Court addressed whether a jury must make the finding of release status under a similar statute, A.R.S. § 13–604(R) (2001). Applying *Apprendi,* we held that the jury must find a defendant's release status beyond a reasonable doubt because § 13–604(R) "exposes a defendant to a sentence in excess of the statutory limits for the crime encompassed by the jury's verdict." [2] *Id.* at 45–46, ¶¶ 16, 22, 31 P.3d at 819–20 (finding A.R.S. § 13–604(P) unconstitutional insofar as it allows "the trial court, rather than the jury, to determine a defendant's release status"). In *Gross,* the defendant was convicted of two counts of forgery, class 4 felonies. *Id.* at 43, ¶ 2, 31 P.3d at 817. These verdicts, coupled with one prior felony conviction, exposed the defendant to a sentencing range of 2.25 years to 7.5 years of imprisonment. *Id.* at 44, ¶ 9, 31 P.3d at 818. The trial court's finding that the defendant was on release status increased the potential maximum sentence to 9.5 years, exceeding the statutory maximum for the offense. *Id.* Thus, the jury, and not the court, was required to make the finding of release status beyond a reasonable doubt under A.R.S. § 13–604(R). *Id.*

---

2. This Court also reached the same conclusion in *State v. Benenati,* noting that "[t]he requirement that the sentencing judge determine a defendant's release status for sentence enhancement purposes under A.R.S. § 13–604(P) unconstitu-

tionally conflicts with the defendant's right to a jury trial on that issue as established in *Apprendi.*" 203 Ariz. 235, 241, ¶ 22, 52 P.3d 804, 810 (App.2002).

¶ 10 Here, the defendant was convicted of one count of aggravated assault, a class 3 dangerous felony. As part of the agreement between the defendant and the State, the conviction was not to be enhanced by the defendant's prior convictions. Based solely on the jury's verdict, which included a finding of dangerousness, the defendant was exposed to a sentencing range of 5 to 15 years of imprisonment. *See* A.R.S. § 13–604(I). At sentencing, the trial court found that the defendant was on release status at the time of the offense. This, combined with the jury's finding of dangerousness, exposed the defendant to a maximum sentence of 18.75 years' imprisonment, which included an additional 3.75 years under the twenty-five percent increase prescribed by A.R.S. § 13–604.02(A).

¶ 11 That the court must find two substantial aggravating circumstances under A.R.S. § 13–702(C) before increasing the statutory maximum sentence by twenty-five percent does not negate the application of *Apprendi* to the release status finding. Because exposure to a twenty-five percent increase under this statute is only applicable to those defendants who are found to have committed a dangerous offense while on release status, the jury must make the findings for both dangerousness and release status. The requirement that the jury make a finding of dangerousness is well settled. *See, e.g., State v. Caldera,* 141 Ariz. 634, 637–38, 688 P.2d 642, 645–46 (1984) (holding that the jury must a make a finding of dangerousness under former § 13–604.01). We now settle the issue of release status and hold that *Apprendi* requires that the defendant's release status be found by the jury beyond a reasonable doubt for the purposes of sentence enhancement under A.R.S. § 13–604.02(A).

■ ¶ 12 The State contends that the allegation of release status does not have to be determined by a jury because it is merely a sentencing factor.[3] However, as we noted in *Gross,* the *Apprendi* court dismissed any "difference between 'elements' and 'sentencing factors' as a 'constitutionally novel and elusive distinction.' " *Gross,* 201 Ariz. at 44, ¶ 12, 31 P.3d at 818 (quoting *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348). A sentencing factor that exposes a defendant to a greater punishment than that authorized by the jury's verdict is the functional equivalent of an element of a greater offense. *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348.

¶ 13 The State also contends that "even if the objectionable provision was excised from A.R.S. § 13–604.02, the trial court would [ ] still be entitled to find the aggravating circumstances enumerated in A.R.S. § 13–702 without any resulting constitutional violation." It is true that a court could find one or more aggravating circumstances under § 13–702(C) to enhance a defendant's sentence regardless of the application of § 13–604.02(A). However, a finding of aggravating circumstances under § 13–702(C) does not allow a court to increase a defendant's sentence beyond the statutory maximum, nor does it result in a flat time sentence. *See* A.R.S. § 13–702(A) (Supp.2003). The issue in this case is not the court's discretion to find substantial aggravating circumstances under § 13–702; rather, it is the potential that such findings will allow a twenty-five percent increase in the maximum sentence for those who commit a dangerous offense while on release under § 13–604.02(A).

■ ¶ 14 Finally, the State contends that any *Apprendi* violation that may have occurred was, in fact, harmless error by the trial court because the defendant admitted

**3.** The State cites to *State v. Cox,* 201 Ariz. 464, 37 P.3d 437 (2002), in support of its contention that a jury finding of release status under A.R.S. § 13–604.02(A) is not required because the statute does not increase a defendant's sentence beyond the statutory maximum. In *Cox,* this Court was asked to determine the applicability of *Apprendi* to A.R.S. § 13–604.02(B), and we concluded that *Apprendi* does not require a jury finding of release status because the statute merely increases the statutory minimum sentence and not the statutory maximum sentence. *Id.* at 469, ¶ 18, 37 P.3d at 440. This Court, without making comment on the correctness of *Cox,* can easily distinguish this case from *Cox.* Section (B) does not contain the critical language contained in section (A), which allows a court to increase the maximum sentence by up to twenty-five percent if two substantial aggravating factors are found and which is the crux of our analysis under *Apprendi.*

his release status. We disagree. Having established that it was error for the trial court to make the finding of release status, we cannot simply abandon this holding because the defendant admitted such status without knowledge of his right to a trial by jury. We also find unpersuasive the State's argument that it could have easily proven the defendant's release status. It is the State's burden to prove this fact beyond a reasonable doubt, regardless of the fact finder.

## II. *The Defendant's Admission Was Not Knowing and Voluntary.*

■ ¶ 15 The defendant further contends that, although he admitted his release status, his admission was not knowing and voluntary because the trial court failed to advise him of his right to a jury trial on his release status. We agree.

¶ 16 Prior to the defendant's admission of his release status, the trial court advised the defendant that he did not have the right to a jury trial.

> THE COURT: All right. Let me advise you that you don't have to make an admission. You have the right to have a so-called trial on this issue. It is not a jury trial. It would be a bench trial. I decide whether this allegation is true or not.
>
> And I believe it has to be proved ... by beyond a reasonable doubt?
>
> [PROSECUTOR]: Yes, I believe so.
>
> THE COURT: I am going to tell him that.
>
> You have a right to had [sic] deny the allegations and have a trial by me, and we would have the trial right now, and I would presume that you were in effect not guilty of this allegation, and the State would have the burden of proving this allegation beyond a reasonable doubt, and I couldn't find the allegation true unless they sustained that burden.

■ ¶ 17 For a guilty plea to be valid, it must be knowing and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see also* Ariz. R.Crim. P. 17.1(b). An admission, like a plea, "involves the waiver of constitutionally protected rights. Accordingly, waiver 'must be an intentional relinquishment or abandon-

ment of a known right or privilege.' " *State v. Djerf,* 191 Ariz. 583, 594, ¶ 35, 959 P.2d 1274, 1285 (1998) (quoting *Boykin,* 395 U.S. at 243 n. 5, 89 S.Ct. 1709); *see also* Ariz. R.Crim. P. 17.6. It is clear from the record that the trial court erroneously advised the defendant that he did not have the right to a trial by jury. Without knowing of his right to trial by a jury, the defendant could not have intentionally relinquished that right. Thus, his admission to his release status was not knowing and voluntary.

## III. *The Batson Challenge*

■ ¶ 18 The defendant next contends that the trial court erred by denying his challenge to the State's use of five of its six peremptory strikes against men during jury selection. He argues that this "pattern" demonstrates that the strikes were based solely on gender.

■ ¶ 19 A party may not exercise a peremptory strike of a potential juror based on gender. *J.E.B.,* 511 U.S. at 146, 114 S.Ct. 1419. An allegation that a peremptory strike was discriminatory requires a three-part inquiry. First, the opponent of a peremptory challenge must establish a *prima facie* case of discrimination. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). A *prima facie* case of purposeful discrimination requires a showing that the totality of the relevant facts and circumstances gives rise to an inference of a discriminatory purpose. *State v. Paleo,* 200 Ariz. 42, 43, ¶ 6, 22 P.3d 35, 36 (2001); *State v. Holder,* 155 Ariz. 83, 87, 745 P.2d 141, 145 (1987).

■ ¶ 20 Second, the proponent of a strike must provide a neutral explanation for the strike; in this case, a gender-neutral explanation. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769. The explanation need not be persuasive or even plausible. *Id.* at 768, 115 S.Ct. 1769. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [ ] neutral." *Id.* (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "[A] 'legitimate reason' is not a reason that makes sense, but a

reason that does not deny equal protection." *Id.* at 769, 115 S.Ct. 1769.

¶ 21 Finally, if a neutral explanation is given, the trial court must decide whether the opponent of the strike has proven purposeful discrimination. *Id.* at 767, 115 S.Ct. 1769. Throughout the process, "the burden of persuasion remains on the party alleging discrimination." *Paleo,* 200 Ariz. at 44, ¶ 6, 22 P.3d at 37.

¶ 22 The State used five of its peremptory strikes against panel members 4, 5, 9, 12, and 19, all of whom were men. Number 4 was a civil engineer who had served as a juror on a criminal case that resulted in a hung jury. Number 5 was a nurse whose brother had been charged with assault, but had not been convicted. Number 9 was an artist with a sixth grade education. Number 12 was a retired marketing representative. During *voir dire,* number 12 inquired as to which direction the witnesses would be facing, and whether the jurors would be able to see their eyes. Finally, number 19 was a mechanic with a high school education whose wife was a pre-school teacher. When asked whether he had any relatives who had been arrested, charged, or convicted of a crime, number 19 responded, "Brothers, sisters arrested, probably DUI."

¶ 23 The defendant challenged the strikes through a *Batson* motion. *See Batson,* 476 U.S. 79, 106 S.Ct. 1712. He alleged that the use of five of six peremptory strikes against men indicated that those strikes were based on gender and no other factor. The defendant argued that the State wanted to eliminate men from the jury because the victim was a woman.

¶ 24 The trial court inquired as to the prosecutor's reasons for striking each of the five men. The prosecutor explained that number 4 was struck because he had been a juror on a hung jury and because, in his experience, engineers want "mathematical" proof before they make a decision. The prosecutor explained that number 5 was struck because his brother had been charged with assault, but had not been convicted, and that the prosecutor was concerned that he might hold his brother's experience against law enforcement personnel.

¶ 25 The prosecutor further explained that number 9 was struck because he had only a sixth grade education and was an artist. In addition to his concern with the level of education, the prosecutor believed that artistic persons "tend to be less concerned with making decisions on judging the facts and applying the law, but going off on other types of tangents." Regarding panel member number 12, the prosecutor noted his apparent need to look directly into a witness's eyes and that he might make decisions regarding credibility based solely on eye contact. The prosecutor was concerned because the victim was Native American and he explained that, in his experience, some Native American cultures show respect by avoiding direct eye contact. The prosecutor worried that number 12 might misinterpret any avoidance of eye contact by the victim.

¶ 26 Finally, the prosecutor explained that number 19 was struck because he had a lower level of education, and because his wife was a pre-school teacher. The prosecutor believed that "individuals who are closely associated with the nurturing professions tend to be less concerned with determining facts" than they are with making a decision based on emotion. Further, the prosecutor noted that number 19 had siblings who had been arrested for, and perhaps convicted of, driving under the influence.

¶ 27 The court found that not only had the defendant failed to make a *prima facie* case of discrimination, but that all of the State's reasons for striking these panel members were "justifiable and reasonable." The panel began with twenty women and fifteen men. The jury was ultimately composed of seven women and two men, including one female alternate.

¶ 28 A trial court's decision on a *Batson* motion will not be set aside unless it is clearly erroneous. *State v. Murray,* 184 Ariz. 9, 24, 906 P.2d 542, 557 (1995). We likewise defer to a trial court's factual findings unless clearly erroneous. However, we review a court's application of the law de novo. *State v. Lucas,* 199 Ariz. 366, 368, ¶ 6, 18 P.3d 160, 162 (App.2001).

¶ 29 We find no error. First, the mere fact that the State used five of its six peremptory strikes against men does not estab-

lish a *prima facie* case of discrimination. Further, the State provided gender-neutral explanations for the exercise of each strike. There was no discriminatory intent inherent in any of the prosecutor's explanations. That the prosecutor's reasons for striking these particular members of the panel were, arguably, applicable to other female members of the panel is immaterial. We hold the totality of the relevant facts and circumstances do not give rise to an inference of a discriminatory purpose.

## CONCLUSION

¶ 30 For the foregoing reasons, we affirm the defendant's conviction, but we vacate his sentence and we remand for further proceedings consistent with this decision.

CONCURRING: G. MURRAY SNOW, Presiding Judge and JOHN C. GEMMILL, Judge.